IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Raymond P. Moore

Civil Action No. 18-cv-00172-RM-NRN

DONALD BIBB,
JOSHUA DAVID BIBB,
MARQUES H. HARRIS,
RICK JOSEPH COLOMBO,
LOREN WILLIAMS,
KEN JORGENSEN,
MARIA CRISTINA JORGENSEN,
DOUGLAS B. PACE,
JERRY MONK,
DONNA MONK,
MIKE TAYLOR,
TYLER ROBINSON,
MELISSA COWDEN,
PATRICK SCHEETZ,
KYLE ROGERS, and
SHANA ROGERS,

  Plaintiffs,

v.

SOUTHERN CONCEPTS RESTAURANT GROUP, INC., a Colorado corporation as the surviving entity of Southern Hospitality Development Corporation, Smokin Concepts Design Corporation, and Bourbon Brothers Holding Corporation,
BOURBON BROTHERS INVESTORS, LLC, a Colorado limited liability company,
BOURBON BROTHERS #14, LLC, a Colorado limited liability company,
HOSPITALITY INCOME & ASSET, LLC, a Colorado limited liability company, formerly Bourbon Brothers, LLC,
BOURBON BROTHERS HOLDING COMPANY, LLC, a Colorado limited liability company,
J.W. ROTH,
MITCHELL ROTH,
DAVID LAVIGNE,
HEATHER ATKINSON,
STEVE COMINSKY,
ROBERT MUDD,
GARY TEDDER,
JAMES FENLASON, and
RICHARD STEWARD,

  Defendants.

---

**ORDER**

---

This matter is before the Court on Defendants' motion to compel arbitration (ECF No. 45). For the reasons below, the Court grants the motion. Defendants' motion to stay (ECF No. 50) is denied as moot, and this case will be administratively closed.

I.   **BACKGROUND**

Plaintiffs are shareholders who invested in Defendant Southern Concepts Restaurant Group, Inc. ("SCRG") and other Defendant entities, which were primarily controlled by Defendant individuals. All Plaintiffs entered into subscription agreements with SCRG containing the following arbitration clause: "Any controversy, claim, dispute and matters of difference with respect to this Agreement and the transactions contemplated hereby shall be resolved through submission to arbitration in Denver, Colorado according to the rules and practices of the American Arbitration Association from time to time in force." (ECF No. 45-3 at 12.)

Several Plaintiffs also entered into subscription agreements with Defendant Bourbon Brothers Investors, LLC ("BBI") containing the following arbitration clause: "Any controversy, claim, dispute and matter of difference with respect to this Agreement and the transactions contemplated hereby shall be resolved through litigation in Denver, Colorado according to the rules and practices of the American Arbitration Association from time to time in force." (ECF No. 61-1 at 11.)

Eleven Plaintiffs subsequently entered into operating agreements with Defendant Bourbon Brothers Holding Company, LLC ("BBHC") containing the following arbitration clause:

> All controversies, disputes or claims arising out of or related to this Agreement shall be resolved first by mediation, and if no resolution can be attained, then by binding arbitration in accordance with Section 13.5, on demand of any party. Such arbitration proceedings shall be heard by one arbitrator from the Judicial Arbiter Group, Inc. ("JAG") in the Denver, Colorado metropolitan area, upon demand of either party. To the extent consistent with this Agreement, the

2

>  arbitration will be conducted under the rules that JAG or the arbitrator may impose and in accordance with the Colorado Arbitration Act.  The arbitrator's decision will be made pursuant to the relevant substantive law of the State of Colorado.
>
>  The arbitrator shall have the right to award or include in the award any relief which he deems proper in the circumstances, including, without limitation, money damages (with interest on unpaid amounts from the date due), specific performance, and attorneys' fees and costs, provided that the arbitrator shall not award exemplary or punitive damages.  The award and decision of the arbitrator shall be conclusive and binding upon all parties hereto and judgment upon the award may be entered in any court of competent jurisdiction.  Each party waives any right to contest the validity or enforceability of such award.  The parties shall be bound by the provisions of any applicable limitation on the period of time by which claims must be brought under applicable law or this Agreement, whichever is less.

(ECF No. 45-10 at 20-21.)  The operating agreement also contains an "entire agreement" clause:

> This Agreement contains the entire understanding between the Members and supersedes any prior understanding and agreements between them respecting the within subject matter.  There are no representations, agreements, arrangements or understandings, oral or written, between the Members relating to the subject of this Agreement which are not fully expressed herein.

(*Id.* at 23.)

After incurring substantial losses on their investments, Plaintiffs brought this action, alleging Defendant entities "engaged in a series of complex corporate formations and reformations in order to hide their utter lack of success in the restaurant business" and "repeatedly misled Plaintiffs in order to induce further investments in . . . Defendant entities." (ECF No. 18, Am. Compl. ¶¶ 2, 3.)  Plaintiffs further allege "[t]he sheer number of entities formed and business concepts and plans created a nearly undecipherable maze for Plaintiffs, and allowed the Individual Defendants to fraudulently remove money from [SCRG] to themselves at the expense of Plaintiffs."  (*Id.* at ¶ 83.)  Plaintiffs assert Defendants violated federal and state securities laws, other statutes, and the common law.

Relying on the arbitration clauses above, Defendants[1] filed a motion to compel arbitration (ECF No. 45) and a motion to stay the proceedings pending completion of arbitration (ECF No. 50). Both motions have been fully briefed. (ECF Nos. 56, 60-62.)

## II.     LEGAL STANDARDS

Under the Federal Arbitration Act ("FAA"), this Court must direct parties of a written arbitration agreement to arbitrate their dispute "upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue." 9 U.S.C. § 4. "[C]ourts must place arbitration agreements on an equal footing with other contracts, and enforce them according to their terms." *Nesbitt v. FCNH, Inc.*, 811 F.3d 371, 376 (10th Cir. 2016). Thus, the Court must first determine whether there exists a valid agreement to arbitrate, subject to generally applicable contract defenses. *See Beltran v. AuPairCare, Inc.*, 907 F.3d 1240, 1250-51 (10th Cir. 2018).

If so, the Court must then determine whether the claims at issue fall within the scope of that agreement. *See Cummings v. FedEx Ground Package Sys., Inc.*, 404 F.3d 1258, 1261 (10th Cir. 2005). When an arbitration clause is worded broadly, "there arises a presumption of arbitrability and arbitration of even a collateral matter will be ordered if the claim alleged implicates issues of contract construction or the parties' rights and obligations under it." *Id.* (quotation omitted). "If the allegations underlying the claims touch matters covered by the parties' arbitration agreement, then those claims must be arbitrated, whatever the legal labels attached to them." *Chelsea Family Pharmacy, PLLC v. Medco Health Sols., Inc.*, 567 F.3d 1191, 1198 (10th Cir. 2009) (quotations and brackets omitted). The Court resolves doubts concerning the scope of arbitrable issues in favor of arbitration. *See Spahr v. Secco*, 330 F.3d 1266, 1269-70 (10th Cir. 2003).

---

[1] Although Defendant Steve Cominsky is proceeding pro se, he has joined in the remaining Defendants' motion to compel arbitration. (ECF No. 55.)

### III. ANALYSIS

#### A. Enforceability of Arbitration Agreements

Plaintiffs first contend the arbitration provisions are unenforceable because they are "ambiguous and fundamentally incompatible with each other." (ECF No. 56 at 3, ¶ 8.) The Court disagrees.

The subscription and operating agreements provide that Colorado law governs. Under Colorado law, "[t]he primary goal of contract interpretation is to determine and effectuate the intent and reasonable expectations of the parties." *Copper Mountain, Inc. v. Indus. Sys., Inc.*, 208 P.3d 692, 697 (Colo. 2009) (en banc). To this end, the Court interprets an agreement in its entirety, "seeking to harmonize and give effect to all provisions so that none will be rendered meaningless" and without "viewing clauses or phrases in isolation." *Id.* (quotations omitted).

Plaintiffs first contend the arbitration clause in the BBI subscription agreement is ambiguous because "[i]t is logically impossible to resolve disputes through 'litigation,' according to arbitration rules." (ECF No. 56 at 7, ¶ 20.) However, to the extent that the term "litigation" could be viewed as ambiguous when viewed in isolation, it is unambiguous in the context of the entire clause, which references the rules and practices of the American Arbitration Association ("AAA"). Such rules and practices do not apply in court, and the Court finds the clause is reasonably susceptible only to the interpretation that the parties intended to resolve any disputes through arbitration. The Court is unwilling to adopt a strained reading of "litigation" that would render portions of the agreement meaningless. The Court further concludes the arbitration clause in the BBI subscription agreement does not conflict with the one in the SCRG subscription agreement, which requires that disputes be resolved "through submission to arbitration in Denver, Colorado, according to the rules and practices of the American Arbitration Association." (ECF No. 45-3 at 12.)

5

Plaintiffs' contention that clauses from the BBHC operating agreement conflict with either of the clauses above is also unavailing. First, the BBHC agreement includes an "entire agreement" clause. "Where, as here, a contract is unambiguous, and contains an integration clause stating that the writing constitutes the entire agreement of the parties, it must be enforced according to its terms." *Moore v. Georgeson*, 679 P.2d 1099, 1101 (Colo. App. 1983). Plaintiffs do not argue the BBHC operating agreement itself is ambiguous. Thus, for the eleven Plaintiffs who entered into that agreement, the arbitration clause is enforceable according to its terms.

Second, even with respect to Plaintiffs who did not enter into the BBHC operating agreement, Plaintiffs have not shown any inherent conflict between the arbitration clauses in that agreement and the ones in the subscription agreements. JAG procedures allow parties to agree to use the AAA rules, just as the parties have done here. Plaintiffs have not identified any inherent conflicts with respect to which rules would be applied. Nor is there a conflict between the operating agreement, which requires mediation before arbitration, and the subscription agreements, which do not address mediation. Therefore, Court finds the variations between these agreements are reconcilable.

      **B.**    **Scope of Arbitration Agreements**

Plaintiffs also contend "the vast majority of [their] allegations, based on fraudulent statements contained in communications to Plaintiffs and documents wholly unrelated to the subscription agreements, are clearly outside the scope of the 'arbitration agreements.'" (ECF No. 56 at 3, ¶ 9.) But most, if not all, of Plaintiffs' claims in the amended complaint directly implicate the subscription and operating agreements containing the arbitration clauses. All of the claims, at a minimum, are collateral matters with respect to those agreements. *See Cummings*, 404 F.3d at 1261. Plaintiffs have not refuted that presumption that attaches to broad arbitration clauses, like the ones here, by identifying any claims they could assert were it not for those agreements.

### C.      Defendants' Request for Attorney Fees and Costs

Defendants request attorney fees and costs in connection with the motion to compel arbitration on the grounds that Plaintiffs did not have a good faith basis to oppose it.  However, the Court does not find that Plaintiffs' arguments regarding the arbitration clauses so lacking in merit that such an award is warranted.  *Cf. Hires Parts Serv., Inc. v. NCR Corp.*, 859 F. Supp. 349, 355 (N.D. Ind. 1994) (awarding fees where same attorneys had unsuccessfully litigated same issue in another court).  Moreover, at least one of the underlying agreements, the BBHC operating agreement, provides that the arbitrator has discretion award attorney fees and costs if it is proper to do so.  The Court finds the better course is to resolve this issue, along with Plaintiffs' claims, through arbitration.  *See Heffernan v. City of Paterson*, N.J., 136 S.Ct. 1412, 1418 (2016) ("[I]n the law, what is sauce for the goose is normally sauce for the gander.").  Therefore, the Court declines to award fees to Defendants.

### IV.     CONCLUSION

Accordingly, the Court GRANTS Defendants' motion to compel arbitration (ECF No. 45) on all Plaintiffs' claims.  Defendants' motion to stay (ECF No. 50) is DENIED AS MOOT.  The case will be ADMINISTRATIVELY CLOSED, subject to reopening for good cause.  *See* D.C.COLO.LCivR 41.2.

DATED this 16th day of January, 2019.

BY THE COURT:

_____
RAYMOND P. MOORE
United States District Judge

7